The case for argument is, and I'm not sure how to pronounce it, Valle v. Ashcroft. My name is Lourdes Stancinco. I am the counsel for Appellant Margarita Valle. We are here because we would like to appeal the decision of the District Court who had summarily dismissed our petition for review. Under Section 310 of the Immigration and Nationality Act, or 8 U.S.C. 1421, a person whose application for naturalization is denied after a hearing before an immigration office, applicant may seek a review of such denial before the U.S. fact and conclusions of law. In this case, Your Honor, we allege that the District Court erred in summarily dismissing the application of Appellant Margarita Valle. Appellant Margarita Valle is a U.S. veteran of World War II during the time that the Philippines was still a under the Japanese occupation. He was inducted as a use of a, and he did not surrender during Japanese occupation, but had decided to join the guerrilla units. Mr. Stancinco, I think that the prior case history shows that the Ninth Circuit has been very generous to Filipino war veterans, and the Congress has been just as vigilant in tightening the laws to make it harder for us to grant the relief that you seek. I kind of want to bring you right to the heart of this thing, which is the hardest part of the case for me. Assuming that your client honorably performed military service on behalf of the United States during the Japanese occupation of the Philippines, as I read the 1997 amendments to Section 405, the law is very clear. If his name isn't on the approved list, we can't grant him the relief. And the Supreme Court has told us that time and again in reversing our equitable efforts to grant relief in these really I understand that line of argument, Your Honor. It's not argument, it's the law. It's the law, I understand. And the 1997 amendment to Section 45, while it may be harsh, we're looking at the congressional record where Senator Inouye made a statement, the purpose of that law is actually to extend the adjudication of 12,000 applications for naturalizations. And then in the congressional record, which we have read, it also stated there that even in the event that the U.S. Department of Army has no record of military service, the General Headquarters of the Armed Forces of the Philippines, the Department of the Armed Forces of the Philippines will stand. But I understand that doesn't appear. I mean, as I understand the facts, his name isn't on any of the lists under the three ways in the statute. Yes. Yes, Your Honor. So the only way that I, as I understand your petition for relief, the only way that we can grant him the relief that you're looking for and still comply with the law? Yes. Yes, Your Honor. I'm looking at the amendment right now. And we are qualifying, we are qualifying the appellant veteran here as a member of the United States Armed Forces, although he may be a guerrilla unit. And under that particular section of the law, they would also, it says here that the executive department exercising supervision over such component, or its successor, which is the Philippine government, if we are able to prove that the guerrilla unit is a part of the USAFE, probably the U.S. Department of the Armed Forces of the Philippines, we may use the Philippine government records to prove military service during World War II and therefore entitle the appellant to naturalization. That is how I look at it. And we are trying, and I have addressed this on my brief, we are trying to also attack the credibility of that guerrilla list that is currently right now with the U.S. Department of Army. And the evidence was even preferred by the government themselves saying that, yes, this list is not accurate. So if I am able to prove with the district court, yes, indeed, that appellant is a member of the guerrilla unit, but is also a member of the U.S. Armed Forces, and so you should allow me to prove it to the executive department, which is a successor of the U.S. Department of the Army, which is the U.S. Department of Army. And I think I am trying to follow along and tie it to the specific statutory sections, your argument. As I read the statute, capital B-I-I-I, it says that someone is qualified, any person who, quote, served honorably in an active duty status within the Philippine scouts or within any other component of the United States Armed Forces. Are you with me? Yes. Now, that's the I-I, the subsection immediately above, talks about someone who is on the final roster prepared by the G-A-D. And I'm not now looking at that, because he's not on that list. We know he's not on that list. He's not on that list, your Honor. I'm saying he's a member of the U.S. Armed Forces, and I'm referring to someone who is qualifying, quote, within any other component of the United States Armed Forces in the Far East, and if he is conceptually within that group, later on in the statute, subsection three, then A-I-I-I, we need some sort of, in the case of an applicant claiming to have served in the Philippine scouts or any other component, we need some sort of a certification of the military service. What is the certification from the United States Executive Department or successor thereto that exercised supervision over such component? Now, assuming that he is in a component of the American Armed Forces within the meaning of these statutory sections, who, what is the United States Executive Department or successor that exercised supervision that must give us the certification? It is the Philippine Department of Defense under the, we call it the Camp Aguinaldo, Your Honor. And how is that Philippine Department of Defense or part of the Department of Defense a United States Executive Department or successor thereto within the meaning of the statute? Your Honor, probably going back to the history, when the Philippines obtained its independence from the United States, all the government records were also transferred to this entity, to the Executive Department of the Philippines. And so, therefore, records that are with the U.S. Department of Army are also contained in the Philippine records, the Executive Department of the Army of the Philippines or the Department of Defense, as they may call it. Isn't that what the parenthetical, though, in little three is designed to exclude? It says, other than a component described in clause little I or double I at any time during the period beginning September 1, 1939 and ending December 31, 1946? Yes, that is excluding I and double I. And that's why I'm responding to Your Honor's question. If I'll be given an opportunity, we will be able to prove that the appellant is a member of a unit which is a component of the U.S. Armed Forces in the Far East, then that will not exclude us then from proving it with other sources other than the records from the U.S. Executive Department. Maybe I wasn't very clear on my question. Doesn't that clause say that you can't do that by the means that you just suggested? Or am I misreading it? I'm sorry, Your Honor. I might be misreading it. But the way I read it, it is allowed to prove it, to be proven by U.S. Executive Department or successor there to that exercise. But it doesn't accept a component that existed during that time period, which is the Philippine component that you're asking us to allow you to go back to. That's how I read that statute. Now, maybe I'm not reading it correctly. Yes. It accepted components described in I and II, Your Honor. Now, maybe I'm pushing the language too hard. And I confess this is a very hard case because I think the sympathies of the Ninth Circuit have been and continue to be with these Philippine veterans. One possible reading of that parenthetical that says except for other than a component described in Clause I or II, well, the component described in little II is the list compiled by the GAD. And by definition, in this case, he's not on the list compiled by the GAD. Therefore, he's not in that component. The second question is, well, is he in a component in II, that is to say, another component of the United States Armed Services? Is that a permissible reading? Yes, Your Honor. That's what I'm trying to do. I assume that you'll have something to say about that. You'll get your turn. Okay. So I think that reading might save you if it's a permissible reading. But the question remains for me, even if that is a permissible reading, and I am not sure that it is, even if that's a permissible reading, we need something out of, quote, the United States Executive Department or successor thereto. That language, I have trouble turning into a Philippine executive department. As I'm tempted to read that, even if I can get so far as to say he comes within this category, I think you need something, for example, from the United States Army. Not necessarily out of the GAD, on the GAD list, but you need something out of the United States Army. That is a possibility, Your Honor. I mean, we will, you know, we have extensive documentation to refer to, just going through the National Archives, to show the different components of the U.S., the use of the U.S. Armed Forces of the Far East. And, but we were deprived of that opportunity by this. So the Army isn't issuing any more of those certificates, are they? There isn't any dispute over that. The President said in 1946, the list is closed. That's it. No more. Oh, yeah. I know that part. So you're not going to be able to get anything from the Secretary of the Army that adds them to the list, which is what you need. Then we go to the secondary evidence, which is the records with the, which I would say would be the successor of the U.S. Executive Department transferring it. I mean, this is my interpretation, transferring authority and power to the Philippine government. Then the successor of interest eventually, of course, would be the Philippine government. When did that occur? I mean, I heard your argument that the Philippine military department would be the successor to the American military department. At what point did that, did they become successor? In 1946, Your Honor. 1946? Yes. The Declaration of Independence. You know, as I'm rereading this, maybe I'm wrong. That is to say, subsection I and subsection II require that someone be on a list. This is an I, listed on a roster prepared by the Recovered Personnel Division. II, listed on the final roster prepared by the GAD, Guerrilla Affairs Division. III merely says served honorably in an active duty status. It doesn't say that you have to be on a list. It says you have to have served honorably. And in the case of an applicant claiming he had to serve in any other component, that means that the executive department under which a person served shall be executive department of the Army. That's the United States, the meaning of the Army. We've got a little problem with, even if that's right, O'Marrow, which we thought that might mean. Well, okay. I got it. But under that subsection, we don't need a certification. All we need is that there be probative evidence that it's true. Yes, Your Honor. Okay. I'll reserve time for rebuttal. Thank you. Thank you. May it please the Court. My name is Jeffrey Bernstein, and I represent the government. Given counsel's argument, we're in a kind of a strange place, because she's essentially made a new argument and a new claim which has never been presented to the agency and certainly wasn't presented to the district court. As I read her argument, she concedes that if Mr. Vallee is claiming guerrilla service, which is the only service he claimed before the administrative agency, and the record reveals that quite clearly, then his name, as they've conceded before the administrative agency and before the court, his name does not appear on the list, and therefore, as a matter of law, as Judge Tallman was indicating, they're not eligible for naturalization. And it ends there. And that was my argument before about 10, 20 minutes ago. That's what I thought the argument was, too. Well, that was the whole thing in district court. They weren't trying to do that. That's correct. Now, opposing counsel brings up a totally different portion of the statute and a totally different basis for naturalization. I think she's precluded from doing so before this court. She didn't make that. Do you want a remand? No, Your Honor. Absolutely not. I don't think that's where the argument's going. No, Your Honor. I don't think there's any room for a remand. And the district court judge, based on the claim before it, before him, made the right decision. She's never applied or, excuse me, he has never applied for naturalization claiming to be a former member of the Philippine Scouts. I mean, I have certainly issues with his eligibility in any event under that provision, but as I understand the argument, or at least the argument that we're trying to construct today, it's not that he might have been a member of the Philippine Scouts, but rather that he might have been a member of any other component of the United States Armed Forces in the Far East. There's, you know, this is all new to me. I mean, it's not new. I'm familiar with the statute, but I certainly am not familiar, I wasn't prepared to discuss it today, and I'm happy to do so. The 1997 Act creates three specific components. The final roster prepared, excuse me, individuals who served within the Philippine Army. Mr. Valle has never claimed that. Individuals who served as guerrillas. That is the basis of Mr. Valle's claim. That was the claim adjudicated by the agency. That was the claim adjudicated de novo by the district court judge. That is the only claim before this Court, and there's no reason to remand. Mr. Valle cannot file a new application because the period for filing applications for naturalization under the statute expired, I believe, in 1995, as I recall. Yes, I think it was 1995. It certainly was before the enactment of the Guerrilla Act, which was applicable retroactive. And the third is served honorably in an active duty status within the Filipino scouts or within any other component of the U.S. I want to say to you, I understand fully your point about not raised below. Okay. Pursuing this for the moment, I and then II, those are not necessarily components within the meaning of III. That is to say, I says is listed on the final roster. I says is listed on the final roster. And then it says served honorably in an active duty status with the scouts or any other component. That is to say, is it possible that someone who is not on either of those two lists nonetheless serves in a component? Because the first two are not written in terms of components. They're written in terms of a list. That's correct, Your Honor. I'm not so sure I can answer your question, except to say that the question you're asking is not before the Court. I can't conceive of any situation where this Court would have jurisdiction to take action based on this brand-new claim, which has never been part of a naturalization application and the time for filing these naturalization applications is long past. I can't imagine this Court having any basis to take any action with respect to this brand-new claim. Your Honor, I'm happy to brief the issue, if you like, with respect to what this means. I have to be honest with you, I'm not prepared to discuss it today because I haven't thought about it. I mean, I'm familiar with the statute because I've worked with it for a while, but I haven't thought about that issue for about three years. But, I mean, it seems, again, I can't stress this anymore, that I can't conceive of any basis upon which this Court can take any action with respect to this new allegation. The only allegation before the Court, again, is the allegation that Mr. Valle served in the guerrillas. Well, but this is not a different allegation. It's just that it might fit under triple I. Number one, it fits under double I if he's on the list. Number two, it might fit under triple I even if he were in a guerrilla unit because it's a component of the armed services, but he's not on the list. That's the argument. I think it's, well, again, that argument wasn't presented to the district court. I understand. But I think it's very clear, as Judge Tallman indicated, that these three branches of the statute are completely different and severable. No, I think that's what I'm saying, too. Or I shouldn't say it. That's what I'm suggesting, too. I mean, if he served in the Philippine Army and can't qualify under that provision, he can't then pop down to triple I. If he claims service as a guerrilla and is not on the list, he can't then pop down to triple I. Congress certainly couldn't have intended that, you know, when it tightened up the statute in response to Almero, it certainly couldn't have intended that a person claiming either Philippine Army service or Philippine guerrilla service could get in through a back door. I don't know what else to say, Your Honor, because, again, this is an argument that's... Were the guerrilla units the United States Armed Forces units? The guerrilla units were guerrilla units, Your Honor. We don't need enough people together to resist, and you're a guerrilla unit, I guess. I'm sorry? You get enough people together to resist, and you are a guerrilla unit. It was an organized guerrilla. There was organized guerrilla activity. Obviously, after the fall of the Philippines to the Japanese, there was organized guerrilla activity, and guerrillas fought alone against the Japanese and fought with American forces in the Japanese. They are not part of the United States Army. They are, as the statute makes clear, there are three separate components that the statute is dealing with, the Philippine Army, the final roster of the guerrillas, and the Philippine scouts. And they were a part of the United States Army in the Far East, right? That's correct, and that's why they're lumped together in III. In any event, there's certainly no evidence, turning back to potential eligibility into III-A, even if you get far enough to determining whether or not there's potential eligibility. Again, there's no evidence in this case because there's never been an allegation made. There's no certification from the United States, and I think the statute makes it clear that certification must be from the United States. I mean, again, that was one of the primary reasons for the act was to, again, overcome this Court's ruling in El Mero that Philippine records could be used, and it was to make clear that the only gatekeepers for purposes of determining who's on lists and who's eligible is the United States Army. Counsel has not cited any evidence that shows that responsibility has been transferred from the United States Army to the Philippines. I don't think there is any. So even if we get so far as to make a determination whether or not it's feasible that she's eligible, there's certainly no evidence. There's no evidence in compliance with the statute. There's no certification, which is required. I take it that the reference to Camp, and I can't pronounce it. Aguinaldo. Aguinaldo. That's simply a repository of records in the custody of the Philippine Army that might be relevant to who was performing service during the war. Yes. Camp Aguinaldo, as I recall, after El Mero, I believe the United States Army or the INS, I can't remember which, designated Camp or the Philippine government designated Camp Aguinaldo as the repository or as the executive department for making these determinations. And what happened in this case was perfectly compliant with El Mero. Even if it wasn't, you don't have the equitable power to naturalize anyway. But I know the petitioner makes an allegation that the INS didn't comply with El Mero, but they did. They wrote a letter to Camp Aguinaldo asking if Mr. Valle was on, you know, if they could certify that Mr. Valle was qualifying or not, and they even sent over to Camp Aguinaldo the records and evidence that Mr. Valle had submitted to the agency. And the Camp Aguinaldo people reported back, I think at least twice, because I think they made a negative decision first and they got additional documents and made another, the second negative determination. They reported back to the INS that Mr. Valle had not performed such qualifying service. So there is, you know, even if the Court could do anything about it, which fortunately or unfortunately it can't, the INS did not act in violation of El Mero. It did not act in violation of any of its obligations in this case. I might add, I mean, I think in a bureaucratic glitch, in 1998, October of 1998, almost a year after the 1997 Act was passed, the INS was still adjudicating this under the former standard. It was only not until the district court level that the INS realized that the 1997 Act was the act which was applicable and made the argument that Mr. Valle didn't appear on the list. Up to that, they had been acting on the negative report from Camp Aguinaldo. Camp Aguinaldo, that's correct, Your Honor. That's what the record shows. Those documents are not in the excerpts of record, but they are in the record before you. And it's not in the record. But unfortunately, they're attached, I believe, to the, to our motion for summary judgment, which filed with district court. Again, this argument has gone very different than I expected it was and I... It must have been interesting you only had to have a 30-second rehearsal for your argument. Yes, Your Honor. And that 30-second rehearsal was held by myself in my hotel room. You know, some arguments are really boring for counsel and we don't really like to have that happen. Well, I appreciate that, Your Honor, and I like to be challenged as well, and you've certainly done so today. Both did an excellent job. Thanks so much. Thank you. Oh, and you have saved some time. Your Honor, I'd just like to address a few points that were raised. Well, how are you going to get around the waiver argument? That's a pretty substantial bar here. If you didn't raise this argument before the INS or the district court, how can we even consider it? Your Honor, that's the point I would like to address. This is not a point where it's brand new now that we are before the Ninth Circuit Court. Beginning from the level of the administrative agency of Legacy INS, we have always alleged, and it's all in the application, that this application is based on military service performed by this individual in World War II. And with that, whether it's in a component of a guerrilla unit, whether it's a component of Philippine Scout or a component of the USAFED that we are going to prove, and we have tried to prove during the interview. And just to correct some misimpression here, I understand that there was a first document coming from Campaginaldo saying that he had no service, but on request for a rehearing, and it will be born in the records, there was a certification showing that he indeed had military service during World War II. As what? As a member of the Philippine Army, as a member of the Philippine Scouts, or as a guerrilla? It's general, Your Honor. It says there that he had performed military service under the 3rd Battalion, 86th Infantry of the USAFED. Is that USAFED the Philippine Army? No, no. It's the USAFED, Your Honor. Okay. And we... Or the Philippine Scouts. I'm sorry. It's not the Philippine Scouts. You're now saying that he was actually a member of the United States Army. I'm not saying that. He's under the component of the United States Army for the far east, Your Honor. Okay. And that's the document which I was just reading a while ago. It's in there, Your Honor. It's very general. It says military service rendered 3rd Battalion, 86th Infantry. Yeah, 3rd Battalion, 86th Infantry Regiment. So that's one point I'd like to clarify. And, yes, this is not a new issue. And then as far as the amendment to Section 405 with that 1997 amendment, I don't believe that the intent of the legislator who presented it, who is Senator Inouye, was to overcome Almera case. The intent was to expedite the adjudication of 12,000 applications for naturalization, which were still pending close to the deadline for applying for naturalization. And to make things easier, they have streamlined the kind of documents that they will be accepting for each application. So that's it, Your Honor. And just in closing, I just want to emphasize, I know I'm trying to avoid seeking an equitable discretion in here, but, again, just want to reiterate that Appellant Valles' dedicated defense to freedom and democracy during World War II is deserving of full U.S. citizenship, and that we pray that he be afforded the opportunity to prove his case and that it be remanded for a full hearing on the merits of his military service during World War II. Thank you, Your Honor. Thank you very much. Thank both counsel for this difficult case. Very interesting. Thank you. The case of Valles v. Ashcroft is now submitted for decision. We have one more case on the oral argument calendar this morning, Central Garden, and I know we will have some lawyers coming in, some of whom already have come. Are all of them here? We were planning on taking a quick recess to wait for them, but if everybody's here, we'll just go. Why don't we take a short recess? Why don't we take a five-minute recess, and then when we come back in, we will do the Central Garden case. All rise.
judges: Canby, W. Fletcher, Tallman